O. V. HOOKER & SON *vs*. A. H. McLEOD, et al.

May Term, 1896—Reargued January Term, 1898.

Present: TAFT, ROWELL, TYLER, MUNSON, START and THOMPSON, JJ.

*Water-power—Partition—Necessity of Regulating Discharge as well as Inlet—Building Common Bulkhead and Flume No Waiver of Right to Partition.*

When a water-power is utilized through several bulkheads, and several owners unite in the use of one of these, a division of the water may be decreed as between those thus uniting, without bringing in as parties those who use the other bulkeads.

The rights of power-owners who together have built and are using a substantial bulkhead and flume, are sufficiently permanent to entitle the parties to an adjustment in equity.

Power-owners who unite in the construction of a common bulkhead and flume, though contributing thereto in proportions different from their relative ownership of the power, do not thereby waive their right to a partition, during the life of the structure, and the partition is to be made on the basis of ownership in the power, not of contribution to the expense of the structure.

One of several power-owners who have thus united in erecting and using a common bulkhead and flume, cannot resist a partition on the ground that it will prevent his utilizing his share of the river, provided it does not prevent his utilizing his share of the water received through the common bulkhead.

Although the master reports that the method of division proposed by the defendants, namely, partitioning the bulkhead and flume into compartments proportionate in width to the respective ownerships, would secure to each owner his share of the water, if used as received, it is considered doubtful whether, at certain stages of the flow, a fair division can be effected without a regulation of the outlets; and the cause should be recommitted for further evidence and report upon that question.

IN CHANCERY. Heard on pleadings, master's report, exceptions thereto, and motion to recommit, at the December Term, 1895, Caledonia County, *Ross*, Chancellor. The motions were overruled, the original bill dismissed, and a decree rendered for the defendants, under the prayer of the cross bill, for a division of the bulkhead and flume in the manner proposed by them. The orators appealed.

The division proposed by the defendants appears in the accompanying diagram, "Deft's. Ex. 2, J. Y., Master," in which A D E F I J is the bulkhead, and the continuation of

those lines indicate the outer walls of the flume, which is a pressed or closed flume. A D is the inlet to the bulkhead, K and L are the outlets to defendant Hynes's wheels, M Q is the outlet to the Milling Company's, and the opening

opposite Z, also marked M, is the place at which the orator's penstock is attached. B H R S and C G P Q are the two proposed partitions. The dotted lines are immaterial in the present aspect of the case. By this method, Hynes would draw through the opening A B into the compartment A B R S; the Milling Company through B C into B C P Q M S R H; and the orators through C D into the compartment formed by the remainder of the bulkhead and flume.

The bulkhead and flume were built in 1881 at an expense of $2167.12, which was borne as follows: by A. H. McLeod, $792.25; by the Bank, $541.77; by Orcutt & Pinard, $566.77; by the orators, $266.33.

The case was argued, first at the May Term, 1896, and held under advisement until set down for reargument at the January Term, 1898, when it was reargued upon the question, "whether the construction of this common flume by some arrangement, as is found by the master, and under the circumstances disclosed by the report, was of itself a waiver of the right to partition during the ordinary life of the structure, or for any other period."

*Bates, May & Simonds* for the orators.

The court ought not to entertain the prayer of the cross bill for a division of the water between these parties, because it amounts to a permanent adjustment of rights, not only as between themselves, but as between them and the owners who make use of the other bulkheads; and the latter are not parties to the proceeding.

But if we are mistaken in this, the division should be made on the basis of the relative contributions to the structure, not of the ownership in the power. The orators are to be treated as having contributed the amount paid by their grantors, Orcutt & Pinard, as well as that paid by themselves, and they thus own in the proportion of $833.10 to $2167.12, the latter sum being the total expense. Having contributed considerably more than one-third to the construction, it is now proposed to limit them to 2—19½

parts, about one-tenth, of the use. This is clearly inequitable. The improvements belonged to all according to their contributions. *Nelson* v. *Clay*, 7 J. J. Marsh. (Ky.) 138: 23 Am. Dec. 387.

The condition which determines the amount of water drawn is not the width of the bulkhead or flume, but the size of the outlet at the wheels. If the water in the bulkhead is level with the water in the pond, the bulkhead is really a part of the pond and it is the escape at the outlet that regulates. The wheels in use by the defendants are capable of drawing very much more than the defendants' shares of the water.

The orators own two-fortieths of the river and are entitled to space in the bulkhead and flume to convey their share. The whole bulkhead is found to be insufficient for this, at certain stages of the water, and yet it is proposed to limit them to about one-tenth of it.

The only effect of the weirs and bulkheads is to divide the natural flow of the river in times when the ponded water is exhausted, and the level of water in all the bulkheads is below the level of water in the pond. The partitioning of this bulkhead is equivalent to making so many separate bulkheads. The report is defective in not showing the effect of the discharge upon the velocity, and the effect of both upon the quantity of water to be taken through the proposed compartments, but that the quantity, and consequently the rights of the parties, will be largely affected by these conditions, is apparent without any report and should be considered by the court.

The subject of division here is an easement. No partition, at law, can be made. Equity, however, does regulate the use of water between common owners. But there is no case where such a method as this has been adopted. The methods in favor are shown by the following citations: Gould, Waters §§ 315, 316, 540; *Bardwell* v. *Ames*, 22 Pick. 333; *Lyon* v. *McLaughlin*, 32 Vt. 423; *Rohn* v. *Harris*, 130

Ill. 525: 22 N. E. Rep. 587: Pomeroy, Rip. Rights, § 154; *Smith* v. *Smith*, 10 Paige's Ch. 470; *Seneca W. Mills* v. *Tillman*, 2 Barb. Ch. 9; *Lehigh Valley R. R. Co.* v. *Society, etc.*, 30 N. J. Eq. 145; *Ballou* v. *Wood*, 8 Cush. 48; *Bliss* v. *Rice*, 17 Pick. 23; *Kennedy* v. *Scovil*, 12 Conn. 317.

When the common structure was built there was no agreement how long the arrangement should last, but it is to be presumed to last as long as the flume is usable. *Anderson* v. *Hubble*, 93 Ind. 570: 47 Am. Rep. 395; *Clark* v. *Glidden*, 60 Vt. 702; *Allen* v. *Fiske*, 42 Vt. 462; *Blaine* v. *Ray*, 61 Vt. 566; *W. U. Tel. Co.* v. *Bullard*, 67 Vt. 272.

The doctrine of equitable estoppel may well be invoked in the case at bar. The orators in reliance upon an implied agreement that they were to enjoy this common flume during its life, gave up their old flume and expended the large sum reported. They are also entitled to enjoy the sum expended by the grantors, Orcutt & Pinard, for when they purchased the latter's rights in the power they must be held to have taken their equitable rights resulting from their contribution to the structure. The court must infer that the parties intended that each should enjoy the common work, while it existed, in the manner shown by the fourteen years of practical interpretation which they have given the arrangement. *Latshaw's Appeal*, 122 Pa. 142: 9 Am. St. 76; *Webb* v. *Laird*, 59 Vt. 108: 59 Am. Rep. 699; *Munroe* v. *Gates*, 48 Me. 463; *Baldwin* v. *Aldrich*, 34 Vt. 526.

*Harry Blodgett* and *W. P. Stafford*, and, upon reargument, *Henry C. Ide*, for the defendants.

The master having found that the division proposed by the defendants is necessary and equitable, the question arises, whether the law justifies a decree accordingly. We maintain that it does. *Lyon* v. *McLaughlin*, 32 Vt. 426; Gould on Waters § 315; *Notes to Agar* v. *Fairfax*, II. Lead. Cas. in Eq. 911–915; *Scovil* v. *Kennedy*, 14 Conn. 349; *Morrill* v. *Morrill*, 5 N. H. 134; *Smith* v. *Smith*, 10 Paige,

Ch. 470; *Cooper* v. *Cedar Rapids Water Power Co.*, 42 Iowa 398; *Doan* v. *Metcalf*, 46 Iowa 128: Pomeroy, Eq. §§ 1387, 1389; *Donnor* v. *Quartermas*, 90 Ala. 164: 24 Am. St. 778; Freeman, Cotenancy and Partition, § 433; *Wood* v. *Little*, 35 Me. 107; *Baldwin* v. *Aldrich*, 34 Vt. 526; V. S. 1515.

Partition is matter of right, and not to be denied, whatever the difficulties. Cases cited above and *Parker* v. *Gerald*, Ambler 236; *Howey* v. *Goings*, 13 Ill. 107; *Turner* v. *Morgan*, 8 Ves. 143.

The question whether the proposed division will give each party his share, is a question of fact, and the finding that it will do so precludes the orators from claiming that a regulation of the discharge is necessary.

Moreover, we contend here, as our adversaries did before the master, that each party may use all the water he can draw through his division of the bulkhead, and the seeming inequalities that may result from the method of using the water at the outlet arise from the obstructions which each sees fit to place there by way of wheels to utilize the water. If he cannot draw as much water through a water-wheel as he might through an empty hole, that is the price he pays for turning the waterflow into power, and he cannot complain that his co-owners obstruct their own outlets less.

The method recommended is based upon the existing situation. If that situation should be changed, relief would probably be granted, if necessary.

There is no necessity for joining the power-owners who do not use this bulkhead. The thing to be divided here is the drawing capacity of this bulkhead and flume. The division among the several bulkheads is found to be fair. How the water is divided among those using one bulkhead does not concern those who use the others.

In the order for reargument the question of the defendants' having lost their right to partition is suggested as one of waiver; but a waiver can be predicated only upon the ground of an estoppel, or an irrevocable license, that is, the

defendants must have done something which ought to deprive them of an otherwise undoubted right. Note to *Ricker* v. *Kelley*, 10 Am. Dec. 44; *Minor* v. *Edwards*, 12 Mo. 137: 49 Am. Dec. 125; *Anderson* v. *Hubble*, 93 Ind. 570; 47 Am. Rep. 400; *Bowman* v. *Taylor*, 2 Ad. and El. 278: Pomeroy Eq. § 805, 807; *Earl* v. *Stevens*, 57 Vt. 474; *New York Rubber Co.* v. *Rothery*, 107 N. Y. 310; *Brown* v. *Bowen*, 30 N. Y. 519: 86 Am. Dec. 406.

Partition cannot be denied by reason of any equities existing between the parties, growing out of expenditures or improvements, for these are all subject to adjustment in the decree. Story, Eq. §§ 656, 556b; *Wood* v. *Little*, 35 Me. 107; *Scovil* v. *Kennedy*, 14 Conn. 349; *Morrill* v. *Morrill*, 5 N. H. 134; *Hall* v. *Piddock*, 21 N. J. Eq., 314; *Maloy* v. *Sloan*, 44 Vt. 311; *Patrick* v. *Marshall*, 2 Bibb (Ky.) 40: 4 Am. Dec. 670; *Nelson* v. *Clay*, 7 J. J. Marsh. (Ky.) 138: 23 Am. Dec. 387; *Louvalle* v. *Menard*, 1 Gilman (Ill. 39): 41 Am. Dec. 161 and note; note to 62 Am. Dec. 483.

If the orators have paid more than they ought towards the construction of the flume, which we deny, they should be protected in the adjustment of expenses, but the defendants should not be denied a division which will secure them their just shares with certainty. The case does not differ from the ordinary one of partition between tenants in common where improvements have been made by one or more.

There is no estoppel here against the defendants' insisting upon a partition, because they have done nothing with the expectation or intention that the orators should act in reliance upon it, and the orators have not changed their condition in reliance upon anything the defendants have done. The burden was upon the orators to show this, if they claimed an estoppel. *Crocker* v. *Cotting*, 166 Mass. 183, and a later decision between the same parties by the same court, January 5, 1898.

In *Conant* v. *Smith*, 1 Aik. 67, partition at law was refused because, considering the nature of the property, justice could be done only in equity. The case is authority for our position. *Brown* v. *Turner*, 1 Aik. 350. In *Coleman* v. *Coleman*, 19 Pa. St. 100: 57 Am. Dec. 641, partition was refused because the parties had bound themselves by covenant to hold the property, an ore bed, "undivided, as a tenancy in common," and an amicable judgment had been procured confirming the deed. *Coleman* v. *Grubb*, 23 Pa. St. 407, *Blewett* v. *Coleman*, 40 Pa. St. 50, *Coleman* v. *Blewett*, 43 Pa. St. 178, depend upon the same facts and follow the same holding. In *Spaulding* v. *Woodward*, 53 N. H. 573: 16 Am. Rep. 392, partition was granted although the petitioner had conveyed to the defendant's grantor by a deed which provided that the property should "remain in common and undivided." *Brown* v. *The Lutheran Church*, 23 Pa. St. 500, was decided upon the authority of *Coleman* v. *Coleman*, and *Latshaw's Appeal*, 122 Pa. St. 142: 9 Am. St. 76, is of the same character. *Hunt* v. *Wright*, 47 N. H. 399. We believe that no court has ever held that the erection of any structure upon common property "was of itself a waiver of the right to partition during the ordinary life of the structure, or for any other period." Freeman, Cotenancy and Partition, § 438; *Mitchell* v. *Starbuck*, 10 Mass. 11.

In no view are the orators entitled to be treated as succeeding to any special equity which may have belonged to Orcutt & Pinard by reason of the latter's contribution to the cost of the structure. Such a license or equity is personal and does not run with the land. *Baldwin* v. *Aldrich*, 34 Vt. 531; *Cowles* v. *Kidder*, 24 N. H. 364: 57 Am. Dec. 287; *Dark* v. *Johnston*, 55 Pa. St. 164: 93 Am. Dec. 732; *King* v. *Newton*, J. Bridg. 115 Jackson ex. dem.; *Hull* v. *Babcock*, 4 Johns. 418; *Prince* v. *Case*, 10 Conn. 375: 27 Am. Dec. 675; *Emerson* v. *Fisk*, 6 Me. 200: 19 Am. Dec. 206; *Cole* v. *Hughes*, 54 N. Y. 444: 13 Am. Rep. 611; note to *Ricker* v. *Kelley*, 10 Am. Dec. 40.

But the orators have no equity in this structure, beyond their proportionate ownership in the water power, even by reason of their own contribution. They received the full benefit of their extra expenditure in having the flume brought nearer to their wheel.

MUNSON, J. The water power in question is used in the operation of mills on both sides of the Passumpsic river at St. Johnsbury, and of a pumping station located on an island which divides the dam. The power is treated as divided into forty parts, of which twelve and one-half parts are used on the north side of the river, eight parts on the island, and nineteen and one-half parts on the south side of the river. The parties to this suit are the owners on the south side; the orators owning two shares, the defendant Hynes four shares, and the defendant Milling Company thirteen and one-half shares; the defendant McLeod's only interest being that of a stockholder in said company.

In 1881 these shares were owned, one by the orators, one by Orcutt & Pinard, four by the Bank, and thirteen and one-half by the defendant McLeod. All these parties except Orcutt & Pinard were then taking water to their respective mills through separate bulkheads and flumes, and Orcutt & Pinard were intending to build a shop to utilize their share, and had the right to take it in the same way. At this time the owners named entered into some arrangement by which the separate bulkheads were abandoned, and a common bulkhead and flume constructed to convey the water to the vicinity of the mills. The means then provided for taking the water are those now in use. After Orcutt & Pinard, the Bank and defendant McLeod had paid their shares of the expense of the common structure, the property of Orcutt & Pinard was acquired by the orators, that of the Bank by the defendant Hynes, and that of McLeod by the defendant Milling Company.

Some years later, all the owners of the power entered into an arrangement under which the owners on the north side

took their shares through a common bulkhead, and the drawing through the different bulkheads was regulated by a contrivance which the parties call a weir. This weir was made by planking the lower part of the three bulkheads up to a common level, and giving to each bulkhead a width corresponding to the proportion of water which those drawing through that bulkhead were entitled to take. The bulkheads still remain as then arranged.

The water passing through the bulkhead owned by the parties to this suit was taken to the several mills of the defendants through openings in the side of the common flume at different distances from the bulkhead, and to that of the orators through an opening in the end of the flume. The defendants became dissatisfied with this arrangement, and made preparations to divide the common flume by partitions; whereupon the orators brought this suit to enjoin them from so doing. The defendants answered, and also filed a cross-bill praying the court to establish an equitable division of the water flowing through said bulkhead. The court below decreed a division of the bulkhead and flume, and the orators appeal.

Nothing is involved in this suit that requires the bringing in of the other owners of the power. All the parties interested in the southern bulkhead and flume and the water taken into it are before the court, and the case calls merely for a determination of their rights as among themselves. The question is not whether the whole power is properly utilized and divided by the three bulkheads, but what the division of that taken by the southern bulkhead shall be while the common structure remains in use.

The rights in suit are of sufficient permanency to entitle the parties to an adjustment in equity. The use of the flume is not determinable at the pleasure of a single owner. Whatever right of independent action may remain, it is certain that one party contributing to the structure could not by any independent action deprive another of the benefit

of his expenditure. The rights conferred upon one by the joint action of all must continue during the ordinary life of the structure. There is no finding as to the ordinary life of such a structure, but the facts reported indicate that it may be considerably longer than the time this one has been in existence.

In the examination of the case some decisions came to the notice of the court which suggested the query whether the construction of this common flume, "by some arrangement," as is found by the master, and under the circumstances disclosed, was of itself a waiver of the right to partition during the ordinary life of the structure; and it was thought advisable to have the question examined and argued by counsel. But, upon argument, we are satisfied that a partition of the flume cannot be denied on the ground indicated.

The expense of the bulkhead and flume was not divided among the parties according to their respective interests in the water, but upon some plan which the case does not disclose; and the orators now insist that the division of the water should be in proportion to the sums contributed to this expense. It is apparent that the interest in the power was not the only thing to be taken into account in apportioning the expense of the flume; for the mills were at different distances from the bulkhead, that of the orators being the farthest; and it is evident that various other conditions may have existed that could have been taken into account in determining an apportionment of the expense. We find nothing in the case to authorize a division of the water upon any basis other than its ownership.

The report finds that the proposed division will restrict, the amount which the orators might heretofore have taken from the common flume, but will not prevent them from drawing their full share of the amount entering the southerly bulkhead, and that the three bulkheads make a fair division of all the water which they are jointly capable

of taking.  The orators object to any division which will prevent them from utilizing two-fortieths of the power at all stages of the water.  We think they cannot resist the proposed division upon this ground.  The owners have not so far deemed it advisable to provide for taking more water than can be received by these bulkheads, and the master considers it impracticable to arrange bulkheads and flumes to utilize the entire flow in times of very high water.  However this may be, we think the parties are entitled to an apportionment of the power as now utilized.  The case calls. merely for an equitable division of such part of the water as the parties themselves have seen fit to provide the means of taking.  The orators are doubtless entitled to two-fortieths of the water at its highest stage, but they are not entitled to space enough in this bulkhead to take it.

The master reports that the present arrangement works a disadvantage to the defendants, and that a division of the flume as proposed will equalize the delivery, if the water is used as received.  The orators insist that if any division is made it should be determined by the apertures of discharge. It would seem that the proposed division must give to the several owners their proper shares of the power utilized, if the water entering the several compartments is given the same facility of escape.  It appears, however, that the discharging capacity of the wheels used in defendants' mills is larger than that of the orators' wheel, considering their respective rights; and it is claimed that in some conditions of the flow the amount entering the proposed compartments will be controlled by the size of the wheels.

It is not clear that the general finding of the master is inconsistent with this claim.  The finding is that a proper division of the bulkhead and flume will give to each owner his fair share of the water flowing through said bulkhead and flume, if he will use the water while the other owners are using it as it flows along.  It would seem from this statement that much of the ground necessary to be covered

in reaching a fair division of the water would lie in the regulation of its use, even if the flume were divided. The report does not show how far these partitions would control the division when the owners are drawing down ponded water with wheels disproportioned to their rights. This will more fully appear from those portions of the report devoted specially to the orators' requests. The orators requested the master to state whether the discharge from the different sections of the flume, if divided, would affect the velocity of the water flowing through them. The master reports thereon that he is not able from the evidence to answer the inquiry; that there was evidence that the velocity affected the amount discharged, and that the amount discharged affected the velocity, but that the conditions controlling either were not shown. The orators also requested the master to state whether the proposed division of the flume would effect a division of the water, if the outlets were disproportioned. The master replies that the evidence does not enable him to determine what the effect of disproportion in the outlets would be with all the other conditions as they are, or as they would be in case of division, and that he sees no reason why the outlets may not be made of a size exactly proportioned to the ownership. The orators further requested the master to report what effect the proposed division would have with all the wheels running and drawing all the water they could, with a full pond in low water. To this the master says he is not able to find that the effect would be any different in low water from what it would be in high water, provided the pond was just full in each case, and that he believes and finds that when the pond is just full, with the weirs as they are, a division of the common bulkhead and flume would be equitable and fair. It is claimed that this answer misses the point of the orators' inquiry. In any event, the answer cannot, when read in connection with the other answers, be said to determine what the regulating effect of the par-

titions would be during the time that the water was being lowered from the top of the dam to the level of the weir. It seems probable that this is an important stage of the water to be considered in making an adjustment of this character, and that a division which did not meet the requirements of this stage would largely fail of its purpose. The master's report is evidently very full and exact as to all matters covered by the evidence, but he says that no hydraulic engineer or expert was produced as a witness, and he has indicated the incomplete condition of the evidence in some important particulars. While it may be that upon a further showing the proposed division will be seen to be equitable and sufficient, there seems to be a shortage in the report, apparently from lack of evidence, which justifies a further inquiry before remanding for final decree. It may be that the proposed partition is essential, even if supplemental regulations are necessary to a complete adjustment. It is possible, however, that the effect of other regulations might be so controlling as to make the partitioning of the flume itself an unjustifiable expense; and it seems desirable that we have further information upon this point before requiring that expenditure.

> *Decree reversed pro forma, and cause remanded with mandate that the report be recommitted to the master with instructions that he receive such further evidence as may, with the evidence already introduced, enable him to answer the inquiries set forth in the opinion, and to report more fully as to the efficacy of the division recommended in the original report, as compared with other practicable methods of division.*